IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

| | |
|---|---|
| Randy N., ) | |
| ) | |
| Plaintiff, ) | |
| ) | Case No.: 20-cv-50305 |
| v. ) | |
| ) | Magistrate Judge Margaret J. Schneider |
| Kilolo Kijakazi, ) | |
| Commissioner of Social Security,[1] ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff, Randy N., seeks review of the final decision of the Commissioner of the Social Security Administration denying his disability benefits. The parties have filed cross motions for summary judgment [21], [28]. For the reasons set forth below, Plaintiff's motion for summary judgment [21] is denied and the Commissioner's motion for summary judgment [29], is granted. The final decision of the Commissioner denying benefits is affirmed.

## BACKGROUND

A.  Procedural History

On May 14, 2013, Randy N. ("Plaintiff") filed for disability insurance benefits. On October 19, 2013, the Social Security Administration ("Commissioner") denied his application, and upon reconsideration on July 14, 2014. R. 250. Plaintiff received his first unfavorable decision from an Administrative Law Judge ("ALJ") on June 2, 2016, who found that Plaintiff was not disabled through December 31, 2015. R. 250-60. The Appeals Counsel remanded that decision based on an incorrect calculation of Plaintiff's date last insured, finding that Plaintiff's date last insured should have been March 31, 2017 – leaving an unadjudicated period. R. 19. On November 1, 2017, an ALJ found that Plaintiff was not disabled from his alleged onset date of August 19, 2009 through December 31, 2015, but became disabled from January 1, 2016 through March 31, 2017. *Id.* The Appeals Counsel remanded the November 1, 2017, decision, finding that the decision failed to apply the medical improvement standard and did not contain a fully developed record as to the period of time after April 1, 2017. *Id.* On December 19, 2018, another ALJ decision affirmed the November 1, 2017 decision, finding that Plaintiff was not disabled from August 19, 2009 through December 31, 2015, but became disabled staring January 1, 2016, continuing through March 31, 2017. R. 20. The Appeals Counsel affirmed the ALJ decision finding Plaintiff was not disabled August 19, 2009 through December 31, 2015, and was disabled January 1, 2016, through March 29, 2017. *Id*. However, the Appeals Counsel vacated the ALJ decision with respect to the issue of disability from March 30, 2017, through the date last insured. *Id.*

---

[1] Kilolo Kijakazi has been substituted for Andrew Saul. Fed. R. Civ. P. 25(d).

1

Relevant to this opinion, on March 3, 2020, a hearing was held by ALJ Lovert F. Bassett where Randy N. appeared and testified. Plaintiff was represented by counsel. Sai R. Nimmagadda, M.D., an impartial medical expert, and James F. Radke, an impartial vocational expert, also appeared and testified. *Id.*

On March 18. 2020, the ALJ issued his written opinion finding that Plaintiff was not disabled prior to January 1, 2016, but became disabled on that date and continued to be disabled through March 29, 2017. *Id.* The ALJ found that on March 30, 2017, medical improvement occurred that was related to Plaintiff's ability to work, and therefore Plaintiff had been able to perform substantial gainful activity from that date through the date of decision. Therefore, Plaintiff's disability ended on March 30, 2017, and he did not become disabled again after that date through his date last insured of March 31, 2019. R. 19-39. Plaintiff appealed the decision to the Appeals Council, and the Appeals Council denied Plaintiff's request for review. R. 1-6. Plaintiff now seeks judicial review of the ALJ's decision, which stands as the final decision of the Commissioner. *See* 42 U.S.C. § 405(g); *Schmidt v. Astrue*, 496 F.3d 833, 841 (7th Cir. 2007). The parties have consented to the jurisdiction of this Court. *See* 28 U.S.C. § 636(c) [8]. Now before the Court are Plaintiff's motion for summary judgment [21] and the Commissioner's cross-motion for summary judgment and response to Plaintiff's motion for summary judgment [28]. Plaintiff filed a reply brief as well [29].

B. The ALJ's Decision

In his ruling, the ALJ found that Plaintiff was disabled January 1, 2016, through March 29, 2017. He then found medical improvement occurred relative to Plaintiff's ability to work and, therefore, Plaintiff's disability ended on March 30, 2017, and he did not become disabled again through his date last insured of March 31, 2019. R. 20. The ALJ applied the statutorily required five-step analysis to determine whether Plaintiff was disabled under the Social Security Act. *See* 20 C.F.R. § 404.1520(a)(4). At step one, the ALJ found that Plaintiff had not been engaging in substantial gainful activity since the alleged onset date of August 19, 2009. R. 23. At step two, the ALJ found that Plaintiff had the following severe impairments: obesity; degenerative disc disease of the lumbar spine; and degenerative joint disease of the right knee. R. 24. The ALJ found that these impairments significantly limited Plaintiff's ability to perform basic work activities. *Id*. At step three, the ALJ found that Plaintiff did not have an impairment or combination or impairments that met or medically equaled the severity of an impairment listed in 20 C.F.R. § 404, Subpart P, Appendix 1. *Id*.

Before step four, the ALJ found that *prior to* January 1, 2016 (the date Plaintiff became disabled), Plaintiff had a residual functional capacity ("RFC") to perform *light work* but with the following limitations: no climbing ladders, ropes, or scaffolds; occasionally climbing ramps or stairs; occasionally stoop, squat and balance; avoid moderate exposure to workplace hazards including dangerous moving machinery and unprotected heights; and avoid moderate exposure to humidity, wetness, and extreme cold. R. 26. The ALJ then found that *beginning on* January 1, 2016, and *continuing through* March 29, 2017, Plaintiff had the RFC to perform *sedentary work* with the same restrictions. R. 30-31. At step four, the ALJ found that Plaintiff was unable to perform any past relevant work from January 1, 2016, through March 29, 2017. R. 31-32. The ALJ

further found that prior to January 1, 2016, Plaintiff was a younger individual age 18-49; and as of January 1, 2016, Plaintiff's age category changed to an individual closely approaching advanced age. R. 32. Finally, at step five, the ALJ found that *prior to* January 1, 2016, considering Plaintiff's age, education, work experience, and RFC, there were jobs that existed in significant numbers in the national economy that Plaintiff could perform; and *beginning on* January 1, 2016, and *continuing through* March 29, 2017, considering Plaintiff's age, education, work experience, and RFC, there were no jobs that existed in significant numbers in the national economy that Plaintiff could perform. R. 32-33. Therefore, the ALJ concluded that Plaintiff was not disabled under the Social Security Act prior to January 1, 2016, but became disabled on that date and continued to be disabled through March 29, 2017. R. 33.

Next, the ALJ concluded that Plaintiff's current severe impairments were the same as those present from January 1, 2016, through March 29, 2017, and beginning March 30, 2017, Plaintiff had not had an impairment or combination of impairments listed in 20 CFR Par 404, Subpart P, Appendix 1. *Id*. Significantly, the ALJ then applied the statutorily required factors for medical improvement found at 20 CFR § 404.1594 and concluded that medical improvement (related to Plaintiff's ability to work) occurred as of March 30, 2017, the date Plaintiff's disability ended, because there was an increase in Plaintiff's RFC. R. 34-39.

Specifically, the ALJ found that beginning March 30, 2017, Plaintiff had the RFC to perform light work with the following restrictions: sit-stand option with maintaining posture for 60 minutes and then going into the alternate posture for 10 minutes; climb ramps and stairs occasionally; no climbing ladders, ropes or scaffolds; occasionally stooping and balancing; no crouching, kneeling or crawling; and avoid exposure to vibrations, wetness, and workplace hazards, including unprotected heights and dangerous moving machinery. R. 34. Next, the ALJ found that Plaintiff was unable to perform past relevant work, and that neither his age category nor his education level had changed since March 30, 2017. R. 38. The ALJ then determined that beginning March 30, 2017, considering Plaintiff's age, education, work experience, and RFC, there were jobs that existed in significant numbers in the national economy that Plaintiff could perform, including mail clerk, routing clerk, and cashier. *Id*. Therefore, the ALJ concluded that beginning March 30, 2017, Plaintiff had been capable of making a successful adjustment to work, and found that Plaintiff's disability ended March 30, 2017, and he did not become disabled again after that date, through his date last insured of March 31, 2019. R. 38-39.[2]

## STANDARD OF REVIEW

The reviewing court evaluates the ALJ's determination to establish whether it is supported by "substantial evidence," meaning "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Moore v. Colvin*, 743 F.3d 1118, 1120-21 (7th Cir. 2014) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). Substantial evidence is "more than a mere scintilla." *Wright v. Kijakazi*, No. 20-2715, 2021 WL 3832347, at *5 (7th Cir. 2021). "Whatever the meaning of 'substantial' in other contexts, the Supreme Court has emphasized, 'the

---

[2] Pursuant to 20 C.F.R. Pt. 404, Supbt. P., Appx. 2, 201-14 (the Medical-Vocational Guidelines, or "grid rules"), a person is considered disabled if over 50 years of age and limited to sedentary work if past work was above the sedentary level. Plaintiff notes in his brief that he turned 50 years old on January 28, 2015; because of this, he argues he "grid" during his closed period of disability – January 1, 2016 through March 31, 2017.

threshold for such evidentiary sufficiency is not high.'" *Id*. (quoting *Biestek v. Berryhill*, 139 S.Ct. 1148, 1153 (2019)). As such, the reviewing court takes a limited role and cannot displace the decision by reconsidering facts or evidence or by making independent credibility determinations, *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008), and "confines its review to the reasons offered by the ALJ." *Green v. Astrue*, No. 11 CV 8907, 2013 WL 709642, at *7 (N.D. Ill. Feb. 27, 2013).

The court will only reverse the decision of the ALJ "if the record compels a contrary result." *Gedatus v. Saul*, 994 F.3d 893, 900 (7th Cir. 2021) (citations and quotations omitted). The court is obligated to "review the entire record, but [the court does] not replace the ALJ's judgment with [its] own by reconsidering facts, re-weighing or resolving conflicts in the evidence, or deciding questions of credibility. [The court's] review is limited also to the ALJ's rationales; [the court does] not uphold an ALJ's decision by giving it different ground to stand upon." *Jeske v. Saul*, 955 F.3d 583, 587 (7th Cir. 2020). Additionally, an ALJ "need not specifically address every piece of evidence, but must provide a logical bridge between the evidence and his conclusions." *Bakke v. Kijakazi*, 62 F.4th 1061, 1066 (7th Cir. 2023) (citations and quotations omitted). *See also Varga v. Colvin*, 794 F.3d 809, 813 (7th Cir. 2015).

## DISCUSSION

The issue Plaintiff raises in this case is whether the ALJ provided adequate support to find that Plaintiff medically improved during the relevant time period – March 20, 2017, through the date last insured of March 30, 2019. Plaintiff argues the ALJ did not support his decision with substantial evidence of medical improvement. Plaintiff notes specifically that he was limited to sedentary work (not no work or light work), at which point he would "grid" (as was the case for his closed period of disability which was awarded in each previous partially favorable decision). The Court finds that the ALJ's determinations were supported by substantial evidence. Therefore, the decision is affirmed.

As a brief background, Plaintiff, while working as a correctional officer in August of 2009, slipped and fell on a wet floor, landing on his right side. [21], p. 2. Plaintiff was diagnosed with right sided sciatica with radiculopathy and underwent a spinal fusion in April 2010. *Id*. Plaintiff underwent a second spinal fusion in March 2011. *Id*. Plaintiff's complaints of right knee pain are documented beginning in August 2015. His back pain is first documented in 2017. The ALJ began his analysis with Plaintiff's back issues.

Plaintiff saw his primary care physician, Dr. Gaertner, in June 2017 for a flare-up in his back. R. 1145-47. Plaintiff reported he woke up with the pain following a 2-hour drive. Dr. Gaertner noted Plaintiff's movement was better, but he was still having trouble getting up from a sitting position. Dr. Gaertner recommended a recheck in 3 weeks if the problems were still present. *Id*. Plaintiff again saw Dr. Gaertner January 31, 2018. According to the record, the reason for the visit was to fill out disability paperwork. R. 1229-31. At that time, Plaintiff reported he was in pain "much of the time" at a level 3 on a scale of 1-10. Examination revealed that his movement with position changes was slow and cautions, and he experienced numbness over the lateral side of his right knee, but that his knee was "doing well." R. 1230. In September of 2018, Plaintiff presented to Dr. Sundar for an initial evaluation of chronic low back and right lower extremity pain. R. 1193-94. Dr. Sundar noted that Plaintiff had been on "low intermittent doses of hydrocodone during

4

flare-ups but nothing consistent." R. 1193. On examination, Plaintiff's lumbar range of motion was "severely restricted" and "somewhat painful." *Id*. Dr. Sundar recommended a medication plan of Gabapentin and a possible MRI follow-up. R. 1194. Plaintiff underwent an MRI on October 2, 2018, which showed multilevel degenerative changes, most significantly at the L3-L4 level where there was "moderate thecal sac effacement and effacement of the right lateral recess." R. 1197. On December 17, 2018, Plaintiff presented to orthopedic surgeon Dr. Ghanayem with low back symptoms. R. 1970-71. Plaintiff rated his back pain at that time at a 4 (out of 10). R. 1970. Dr. Ghanayem noted Plaintiff walked with a limp, but without the use of an assistive device, and a straight leg raise elicited back pain. Dr. Ghanayem recommended that Plaintiff focus on his gait pattern and noted he would see Plaintiff regarding his back issues on an "as-needed basis." R. 1971. Just over a year later, on January 16, 2020, Plaintiff returned to Dr. Ghanayem complaining of increased back pain. R. 1728. Dr. Ghanayem noted a limp on Plaintiff's right side and tenderness in the lumbar base. *Id*. The x-rays showed his spinal fusion stable from L4 to sacrum, but the L3-L4 disk space was at a 50% collapse from the last set of x-rays, along with some "foraminal stenosis causing some of his symptoms and the facet disease." *Id*. Based on this record of Plaintiff's back issues, the ALJ found that Plaintiff did not evidence any significant worsening of his back symptoms until after his date last insured (March 30, 2019). According to the ALJ, "[t]he evidence relative to the period from March 30, 2017 through the date last insured shows the claimant doing well with his back with only rare and fairly mild back flares and no neurological deficits." R. 35-36.

Next, the ALJ considered Plaintiff's right knee issues. As background, Plaintiff underwent a total right knee arthroplasty in January of 2017. [21], p. 3. Records indicate the replacement was successful, with proper alignment and fixation. R. 1113. Plaintiff reported he recovered well and the knee "felt very good." R. 1979. The next relevant medical record is two year later – January 15, 2019 – when Plaintiff presented to orthopedic surgeon Dr. Wu, for an evaluation of his right knee. R. 1979-1986. At that time, Plaintiff complained of pressure and instability in his right knee. R. 1979. He reported limited walking (6-12 blocks), and a moderate limp. Plaintiff walked without an assistive device and was taking Tylenol for pain. *Id*. The imagining of Plaintiff's knee showed the implants in good position without sign of loosening, but Dr. Wu recommended a revision of the right knee arthroplasty. R. 1980. Plaintiff underwent surgical revision of the right knee arthroplasty on March 4, 2019 (26 days prior to his date last insured). R. 1326. Plaintiff participated in 5 and a half weeks of physical therapy on his right knee – 7 appointments total. R. 1907. At his final physical therapy appointment on April 11, 2019, it was noted that Plaintiff had made "significant progress," was a "very motivated individual who has worked hard following his revision," and was "compliant with his home program" where he was biking, performing exercises, and using weights on his knee to regain extension. *Id*. His major complaint throughout his physical therapy program was his back and right hip pain. Plaintiff reported feeling comfortable with his final session and denied any concerns. *Id*. At his post-operative appointment on April 16, 2019, Plaintiff reported to Dr. Wu that he was very happy with his knee and that it felt "like heaven" compared to his first knee replacement. R. 1689. Dr. Wu's record indicated "excellent early result after revision right TKA for flexion instability." *Id*. As to Plaintiff's right knee issues, the ALJ considered the record, including all of the above, and opined that Plaintiff did well with his first right knee replacement until he reported a recurrence of pain and instability in January 2019, which led to his second knee replacement, shortly before his date late insured. R. 36. The ALJ found that "from March 30, 2017, through March 31, 2019, the claimant experienced right knee symptoms at

5

a significant level only from January 2019 through May 2019, a period of only 5 months." R. 36.

In assessing Plaintiff's medical improvement (the crux of the case), the ALJ summarized by noting that as early as February 15, 2017, Plaintiff was able to walk unassisted with a slight limp, X-rays the following week showed the right knee prosthesis to be in good position with alignment fixation, Plaintiff was discharged from physical therapy to a home exercise program on March 29, 2017 (two months after his surgery), and Plaintiff's doctor assessed that Plaintiff was "doing well" with "excellent" range of motion of the knee. R. 34. However, Plaintiff argues that this assessment ignores substantial evidence that Plaintiff was struggling with back pain radiating into his right leg and, beginning around September 2018, the signs of flexion instability with his right knee replacement.

Plaintiff first argues the ALJ ignored substantial evidence that Plaintiff's medical problems limited him to sedentary work subsequent to March 2017. As noted above, substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moore,* 743 F.3d at 1120-21 (7th Cir. 2014) (citations and quotations omitted). Plaintiff argues the medical notes, after March 2017, show that Plaintiff experienced ongoing flares of back pain, had spondylosis at L3/4, abnormal findings on examination, and an abnormal gait; therefore, substantial evidence existed that Plaintiff did not medically improve and was incapable of light work. Plaintiff also argues that the testimony of Dr. Krishnamurthi, the medical expert who testified at Plaintiff's third administrative hearing, supported the claim that Plaintiff's back issues limited him to sedentary work, at the very least as of September 2018. Plaintiff criticizes the findings of the hearing medical experts, Dr. Nimmagadda and Dr. Jilhewar, who found that Plaintiff retained the capacity to perform light work. The ALJ found Dr. Krishnamurthi's testimony "somewhat inconsistent" and lacking in a firm grasp of Plaintiff's medical records and, therefore, did not give his testimony as much weight as that of Dr. Nimmagadda. R. 37. The ALJ largely adopted the testimony of Dr. Nimmagadda and Dr. Jilhewar, finding their testimony consistent. Dr. Nimmagadda testified that the record supported a finding that Plaintiff could perform light work (with restrictions) because the record did not establish any sensory, reflex, or motor compromise. The ALJ found that Dr. Jilhewar testified that Plaintiff's February 2017 x-rays and March 2017 examination by the orthopedist showed that Plaintiff demonstrated excellent range of motion and was doing well, and that Dr. Nimmagadda opined that at most, there was a brief 3-to-6-month period during which Plaintiff would have reasonably been limited to sedentary work – not enough to meet the statutory durational requirement. For these reasons, the ALJ largely adopted the medical expert testimony of Dr. Nimmagadda and Dr. Jilhewar. *Id*.

Plaintiff next argues that the ALJ mischaracterized the record and ignored evidence. Plaintiff cites to his September and December 2018 neurosurgery evaluations, where both surgeons noted that Plaintiff was experiencing back pain radiating into his right leg, and Dr. Sundar recommended Plaintiff try a spinal column stimulator. Plaintiff also points to an RFC medical statement completed by Dr. Gaertner (Plaintiff's treating physician) in June 2017 which indicated Plaintiff could not stand or walk longer than 2 hours in an 8-hour workday. In his ruling, the ALJ did acknowledge Plaintiff's September and December 2018 evaluations, noting that Plaintiff began pain management in September 2018 where Plaintiff was on intermittent doses of hydrocodone during pain "flare-ups," but not consistently taking any medication. R. 35. The ALJ also noted that in December 2018, Plaintiff complained of back pain at a level 4, and leg symptoms at a level 2

6

(on a 10-point scale). *Id*. At that time, Plaintiff was not using an assistive device, had some limited range of motion and tenderness, but was at normal strength, sensation, and reflexes. *Id*. Based on these records, the ALJ did not find evidence of a significant worsening of Plaintiff's symptoms during the relevant period.

As to Dr Gaertner, the ALJ addressed Dr. Gaertner's opinion that Plaintiff could only stand for 2 hours in an 8-hour workday, concluding that little weight was to be given to this opinion because it was not adequately supported by the treatment notes in the record. R. 29-30. Nevertheless, Plaintiff further argues that Dr. Gaertner's opinion should be given more weight considering Dr. Gaertner was Plaintiff's treating physician. Relevant here, "[f]or claims filed before March 2017, a treating physician's opinion on the nature and severity of a medical condition is entitled to controlling weight if it is well-supported by medical findings and consistent with substantial evidence in the record." *Johnson v. Berryhill*, 745 F. App'x 247, 250 (7th Cir. 2018) (citing 20 C.F.R. 404.1527(c)(2)). Under 20 C.F.R. § 404.1527, the ALJ must consider supportability, consistency, relationship with the claimant, specialization and any other factors which support or contradict the medical opinion. 20 C.F.R. § 404.1527(c). Nevertheless, an ALJ need not "blindly accept a treating physician's opinion" *Schreiber v. Colvin*, 519 Fed. Appx. 951, 958 (7th Cir. 2018). Here, Plaintiff argues the ALJ failed to provide an analysis of the statutory factors as they related to Dr. Gaertner. In support of this argument, Plaintiff notes that Dr. Gaertner consistently documented that Plaintiff had ongoing pain in his back and right knee; had a treating relationship with Dr. Gaertner; was referred to other physicians by Dr. Gaertner; and Dr. Gaertner's specialization as an internal medicine doctor were the same qualifications as Drs. Nimaggadda and Jilhewar. However, the ALJ did acknowledge Dr. Gaertner as Plaintiff's treating physician and summarized his findings that supported the medical source statement. As noted above, the ALJ gave little weight to Dr. Gaertner's opinions noting that the significant limitations Dr. Gaertner provided in the medical source statement were not supported by the "sparse treatment notes in the record." R. 29-40. The Court finds the ALJ properly weighed Dr. Gaertner's opinion within the regulatory guidelines as well as the guidance from the Seventh Circuit.

Finally, Plaintiff argues that the ALJ failed to properly evaluate Plaintiff's credibility. He takes the position that the ALJ did not support his conclusions that Plaintiff's reports of pain – both its intensity and its frequency – were inconsistent with the medical record. For support, Plaintiff notes that at all four administrative hearings in his case, he testified to back pain radiating down his right leg, which had a significant impact on his functioning. He further testified repeatedly that his knee problems caused him issues with standing and walking. Plaintiff argues his testimony was "consistent, straightforward, and credible." [21], p. 19. In response, Defendant states substantial evidence supported the ALJ's assessment of Plaintiff's subjective complaints. As noted by Defendant and above, the ALJ considered Plaintiff's testimony regarding his back pain, subsequent leg pain, the worsening of his back pain since March 30, 2017, increased symptoms after walking 10 or 15 minutes, and his statements that he experienced difficulties standing and walking after the demands of light work. The ALJ is required to "consider the entire case record and give specific reasons for the weight given to the individual's statements." *Simila v. Astrue*, 573 F.3d 503, 517 (7th Cir. 2009). "On review, we merely examine whether the ALJ's determination was reasoned and supported." *Shideler v. Astrue*, 688 F.3d 306, 311 (7th Cir. 2012). Here, the Court finds that the ALJ did a more than adequate job of addressing and assessing Plaintiff's credibility through a fair summary of his testimony. The ALJ rejected Plaintiff's

testimony in comparison to other evidence. As an example, the ALJ laid out how objective evidence did not document back pain flares at the intensity or persistence Plaintiff alleged. Similarly, the ALJ documented objective evidence that undercut Plaintiff's subjective claims of knee pain.

The Court finds that substantial evidence supports the ALJ's determination that Plaintiff medically improved from March 30, 2017, through his date last insured of March 31, 2019, and was able to perform light work. *See Pepper v. Colvin*, 712 F.3d 351, 361-63 (7th Cir. 2013) (substantial evidence supported ALJ determination that plaintiff had the RFC to perform light work where ALJ adequately discussed the issues). The ALJ, in more than adequate detail, set forth Plaintiff's testimony, the medical record – including Plaintiff's treating physician, Dr. Gaertner, orthopedic surgeons, Drs. Ghanayem and Wu, and the testimony of medical experts Drs. Krishnamurthi, Nimmagadda and Jilhewar. The ALJ formed the basis of the RFC determination and medical improvement based on all of the evidence.

## CONCLUSION

For the foregoing reasons, Plaintiff's motion for summary judgment [21] is denied and the Commissioner's motion for summary judgment [28], is granted. The final decision of the Commissioner denying benefits is affirmed.

Date: 09/12/2023   ENTER:

_Margaret J. Schneider_
United States Magistrate Judge